|   |   |
|---|---|
| UNITED STATES DISTRICT COURT<br>WESTERN DISTRICT OF WASHINGTON<br>AT SEATTLE | |
| U.S. HEALTHWORKS HOLDING COMPANY, INC., *et al.*,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>THE REGENCE GROUP, et al.,<br><br>　　　　Defendants. | Case No. C04-2375L<br><br>ORDER REGARDING OUTSTANDING MOTIONS |

This matter comes before the Court on plaintiffs' "Motion to Compel Arbitration" (Dkt. # 2, the "Motion to Compel") and on defendants' "Motion to (1) Dismiss Utah Defendant for Lack of Personal Jurisdiction, (2) Compel Arbitrations, (3) Stay Any Remaining Claims Pending Arbitration, and (4) Transfer Utah Claims to Utah" (Dkt. # 8, the "Defense Motion"). For the reasons set forth below, the Motion to Compel is granted in part and denied in part, and the Defense Motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiff U.S. HealthWorks Holding Co., Inc., ("USHW-Holding") is a holding corporation whose subsidiaries provide medical care in sixteen states, including Washington and Utah. U.S. Healthworks Medical Group of Washington, P.S. ("USHW-Medical"), and U.S. Healthworks of Washington, Inc. ("USHW-Washington") are subsidiaries of USHW-Holding

ORDER REGARDING
OUTSTANDING MOTIONS

that provide medical care throughout Washington state. U.S. HealthWorks Medical Group of Utah, Inc. ("USHW-Utah") is a former subsidiary of USHW-Holding. Until recently, it provided medical care in Utah. USHW-Holding, USHW-Medical, USHW-Washington, and USHW-Utah are referred to, collectively, as "Plaintiffs".

Defendant The Regence Group ("TRG") is the parent company of defendants Regence BlueShield ("Regence-Washington") and Regence BlueCross Blueshield ("Regence-Utah"). Regence-Washington and Regence-Utah both provide health insurance. TRG, Regence-Washington, and Regence-Utah are referred to, collectively, as "Defendants."

On April 1, 2003, USHW-Medical entered into an agreement with Regence-Washington under which USHW-Medical agreed to provide medical services to Regence-Washington insureds (the "Washington Agreement"). The Washington Agreement contains an arbitration clause stating that "any claims or disputes between the parties arising out of or relating to this Agreement . . . shall be submitted to arbitration." Dkt. # 3, Decl. of Steven McLaughlin ("McLaughlin Decl."), Ex. A, ¶ 6.3. The Washington Agreement requires that any arbitration take place in Seattle, Washington.

On January 1, 2003, USHW-Utah and Regence-Utah entered into a similar agreement (the "Utah Agreement"). The Utah Agreement contains a similar arbitration clause to that in the Washington Agreement. It states that "[a]ll claims or disputes between the parties arising out of or relating to this Agreement . . . shall be settled by final and binding arbitration . . . ." Id., Ex. E. at ¶ 9.3. The Utah Agreement requires that any arbitration take place in Salt Lake City, Utah.

Plaintiffs contend that Defendants have wrongfully denied claims submitted under the respective agreements and have used the internal appeals processes provided for in the agreements to discourage them from pursuing judicial remedies. As a result, Plaintiffs filed this action, in which USHW-Medical claims breach of contract against Regence-Washington and claims interference with contract and business expectations, conspiracy, violations of 18 U.S.C. § 1962(c) ("RICO"), violations of the Washington Criminal Profiteering Act, and violations of

ORDER REGARDING
OUTSTANDING MOTIONS

the Washington Consumer Protection Act against TRG and Regence-Utah.  USHW-Washington claims breach of contract against Regence-Washington, and claims interference with contract and business expectations, conspiracy, and violations of RICO, the Washington Criminal Profiteering Act, and consumer Protection Act against all three Defendants.  USHW-Utah claims breach of contract against Regence-Utah and claims interference with contract and business expectations, conspiracy, violations of RICO, the Washington Criminal Profiteering Act, and Consumer Protection Act against TRG and Regence-Washington.  USHW-Holding claims interference with contract and business expectations, conspiracy, and violations of RICO, the Washington Criminal Profiteering Act, and Consumer Protection Act against all three Defendants.

On November 24, 2004, the same day they filed this action, Plaintiffs filed the Motion to Compel.  On December 16, 2004, Defendants filed their Defense Motion.  The two motions require the Court to determine (1) whether it has personal jurisdiction over Regence-Utah, (2) which of Plaintiffs' claims are subject to the arbitration clauses in the Washington and Utah Agreements, (3) which claims must be stayed pending arbitration, (4) the venue in which the arbitrations must occur; (5) whether a single arbitrator should preside over both arbitrations, (6) whether the non-arbitrable claims should be stayed, and (7) whether the claims relating to the Utah Agreement should be transferred to Utah.

## II.  ANALYSIS

**A.    The Motion to Dismiss Regence-Utah for Lack of Personal Jurisdiction.**

Defendants move to dismiss Regence-Utah for lack of personal jurisdiction.  In order for this Court to exercise personal jurisdiction over Regence-Utah, there must "be an applicable rule or statute [that] potentially confers jurisdiction over the defendant."  Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174, 1177 (9th Cir. 2004) (internal quotations omitted).  In addition, this Court must be able to serve process on the defendant.  See Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Invest., Inc., 788 F.2d 535, 538 (9th Cir.

ORDER REGARDING
OUTSTANDING MOTIONS

1  1986).  Where a statute provides for service of process, that statute may also be used as the
2  "basis for exercising personal jurisdiction."  Action Embroidery, 368 F.3d at 1177.  If no federal
3  statute authorizes service of process, "the federal court must rely on the jurisdictional statute of
4  the state in which the federal court is located to obtain jurisdiction."  Butcher's Union, 788 F.2d
5  at 538.

6       Plaintiffs claim that the RICO statute, 18 U.S.C. § 1962(d), authorizes service of process
7  and, consequently, personal jurisdiction.  In the alternative, Plaintiffs argue that personal
8  jurisdiction is appropriate under Washington's long-arm statute.  Plaintiffs carry the burden of
9  establishing personal jurisdiction.  See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,
10 328 F.3d 1122, 1128-29 (9th Cir. 2003).  Plaintiffs, however, "need only make a prima facie
11 showing of jurisdiction to avoid defendant's motion to dismiss."  Id. at 1129 (citing Doe v.
12 Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001)).  Plaintiffs' version of the facts will be taken as
13 true unless that version is directly contradicted by Defendants.  See id.  Any factual conflicts
14 "must be resolved in [Plaintiffs'] favor for purposes of deciding whether a prima facie case for
15 personal jurisdiction exists."  Doe, I, 248 F.3d at 922 (internal quotations omitted).

16     **1.     Personal Jurisdiction Under RICO.**

17      18 U.S.C. § 1965(b) authorizes "service of process upon RICO defendants residing
18 outside the federal court's district when . . . the 'ends of justice' require it."  Butcher's Union,
19 788 F.2d at 538 (quoting 18 U.S.C. § 1956(b)).  Before it may invoke RICO's "ends of justice"
20 jurisdiction, this Court "must have personal jurisdiction over at least one of the participants in
21 the alleged multidistrict conspiracy, and the plaintiff must show that there is no other district in
22 which a court will have personal jurisdiction over all of the alleged co-conspirators."  Id.

23      Plaintiffs have met these requirements.  This Court has personal jurisdiction over
24 Regence-Washington.  In addition, Plaintiffs assert (and Defendants do not contest) that there is
25 no other district in which a court will have personal jurisdiction over all of the alleged co-
26 conspirators.  See Declaration of Alexander Johnson at ¶¶ 4 and 5.  As a result, this Court is able

ORDER REGARDING
OUTSTANDING MOTIONS

to serve process on, and exercise personal jurisdiction over, Regence-Utah.[1]

### 2. Personal Jurisdiction Under Washington's Long-arm Statute.

Even if RICO did not convey personal jurisdiction over Regence-Utah, this Court would still be able to exercise specific personal jurisdiction.[2] Since jurisdiction under Washington's long-arm statute, RCW 4.28.185, is coextensive with jurisdiction under the due process clause, the only question is whether jurisdiction comports with due process.

The Ninth Circuit has traditionally applied a three-part test to determine if a court may exercise specific jurisdiction over a nonresident defendant:

> (1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)).

### a. Purposefully Directed Activities.

In the context of intentional tort claims, such as those asserted by USHW-Washington, USHW-Medical, and USHW-Holding against Regence-Utah, the Ninth Circuit applies an "effects" test to determine whether a defendant has intentionally directed activities into the

---

[1] Despite Defendants argument to the contrary, RICO jurisdiction does apply to alleged violations of 18 U.S.C. § 1962(c). See 18 U.S.C. § 1964.

[2] The "BlueCard Program" does not, as Plaintiffs' argue, give this Court general jurisdiction over Regence-Utah. Although the BlueCard Program may constitute doing business with Washington, it is well-settled that "[e]ngaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders." Bancroft & Masters, Inc. v. Augusta Natl., Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). Since, as Defendants aver, Regence-Utah is incorporated in Utah, with its place of business and all employees located in Utah, the high standard for general jurisdiction has not been met.

ORDER REGARDING
OUTSTANDING MOTIONS

forum state. The effects test is satisfied if Regence-Utah "(1) commits an intentional act; (2) expressly aimed at the forum state; (3) causing harm in the foreign state that [Regence-Utah] knew was likely to be suffered in that state." CE Distribution, LLC v. New Sensor Corp., 380 F.3d 1107, 1111 (9th Cir. 2004).

Plaintiffs' Complaint and supporting affidavits provide sufficient prima facie evidence to satisfy the effects test. First, Plaintiffs allege that Regence-Utah committed the intentional torts of interfering with USHW-Washington's contractual relationships and business expectancies, RICO, criminal profiteering, and unfair trade practices. Such conduct meets the "intentional acts" prong. See Harris Rutsky, 328 F.3d at 1131.

Second, Plaintiffs have satisfied, if barely, the express aiming requirement. Plaintiffs allege that documents relating to USHW-Utah's internal appeal were used in Washington to undermine USHW-Medical's internal review process.[3] By allowing these documents to be used by other Regence entities in the Washington internal review, Regence-Utah has "individually targeted," USHW-Washington and is subject to Washington's jurisdiction. Bancroft & Masters, 223 F.3d at 1088.

Third, it is safe to conclude that the brunt of the harm suffered as a result of the alleged intentional torts occurred in the state in which the two purported victims are incorporated and conduct their business. See Harris Rutsky, 328 F.3d at 1131.

**b.     Arising Out of or Relating To Forum-Related Activities.**

The Ninth Circuit applies a "but for" test to determine whether claims against a defendant arise out of its forum-related activity. See, e.g., Harris Rutsky, 328 F.3d at 1131-32. Here, the intentional torts alleged by Plaintiffs against Regence-Utah arise out of or relate to Regence-

---

[3]Although Plaintiffs assert in their Complaint that the "Regence Enterprise," that is, Defendants as a whole, used the Utah information in the internal review between Regence-Washington and USHW-Washington, see Complaint at ¶ 5.11.14, Plaintiffs subsequently asserted that the information was "obtained" by Regence-Utah. See McLaughlin Decl. at ¶ 7.

ORDER REGARDING
OUTSTANDING MOTIONS

-6-

Utah's forum-related activities. But for Regence-Utah's conduct in providing information to its related entities, the intentional tort claims asserted by USHW-Washington and USHW-Medical against Regence-Utah would not have arisen.

### c. Reasonableness of Specific Jurisdiction.

Plaintiffs have satisfied the first two prongs of the test. The burden then shifts to Defendants to "present a compelling case" that the exercise of jurisdiction would be unreasonable. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985). A court weighs seven factors in considering reasonableness:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Mattel, Inc. v. Greiner & Hausser GmbH, 354 F.3d 857, 866-867 (9th Cir. 2003).

Regence-Utah has not carried its burden of presenting a compelling case against jurisdiction. Although Regence-Utah's purposeful interjection is slight and it may be a burden for Regence-Utah to litigate in Washington, those factors are not so significant as to make this forum unreasonable. This is especially true considering that the remaining factors weigh heavily in favor of retaining jurisdiction here.

### 3. Pendant Jurisdiction of Breach of Contract Claims Against Regence-Utah.

Since this Court retains jurisdiction under both RICO and Washington's long arm statute, it will exercise pendant personal jurisdiction over the claims relating to the contract dispute between Regence-Utah and USHW-Utah. See CE Distrib., 380 F.3d at 1113. Regence-Utah's breach of contract claim arises out of the same nucleus of operative facts as the RICO, conspiracy, and Washington statutory violations. It is reasonable to require Regence-Utah to answer the breach of contract claims in the same suit in which the tort-related claims have been raised. See id.

ORDER REGARDING
OUTSTANDING MOTIONS

1 **B.      The Motions to Compel Arbitration.**

2      Although both Plaintiffs and Defendants have moved to compel arbitration, their views on how the arbitrations should proceed differ sharply.  The difference in the parties' views requires this Court to determine (1) which of the claims are subject to arbitration, (2) which parties may compel arbitration, and (3) whether the arbitrations may be consolidated, and, if not, whether a single arbitrator should be appointed to conduct both arbitrations.

**          1.      Claims Subject to Arbitration.**

     At oral argument, Plaintiffs rightly acknowledged that all of their claims fit within the arbitration clauses of the respective contracts.  Each arbitration clause covers "claims or disputes between the parties arising out of or relating to this Agreement that cannot be resolved through the internal appeals process. . . ."  Washington Agreement at ¶ 6.3; Utah Agreement at ¶ 9.3.  Such arbitration clauses are interpreted liberally to cover a broad range of disputes beyond those only relating to the contract.  See Mediterranean Enters., Inc. v. Ssangyong Corp., 708 F.2d 1458, 1464 (9th Cir. 1983).  Further, there is no question that the claims asserted by Plaintiffs "touch matters" contained in the agreements and are, therefore, "subject to the agreement to arbitrate."  Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999).

**          2.      Compelling Arbitration.**

     The fact that the arbitration clauses are broad enough to cover the Plaintiffs' claims does not fully resolve the question of arbitrabilitity.  The parties seeking to compel arbitration must have standing to do so under the respective agreements.  Clearly USHW-Medical and Regence-Washington, the signatories to the Washington Agreement, have standing under that agreement to compel one another to arbitrate, and USHW-Utah and Regence-Utah, the signatories to the Utah Agreement, have standing under that agreement to compel one another to arbitrate.  Defendants, however, assert that all three of them have standing to compel arbitration under both agreements.  In addition, Defendants argue that the arbitration clauses in the respective agreements not only bind the plaintiff signatories to arbitration, but also bind the nonsignatory

ORDER REGARDING
OUTSTANDING MOTIONS

plaintiffs.

This Order first addresses which Defendants have standing to invoke the respective arbitration clauses and then addresses who may be bound to arbitrate under the Washington and Utah Agreements.

### a. Standing to Compel Arbitration.

It is well-settled that "the right to compel arbitration stems from a contractual right." Britton v. Co-Op Banking Group, 4 F.3d 742, 744 (9th Cir. 1993). Thus, in order to compel arbitration, a nonsignatory must establish that it has a right to enforce the terms of the contract because it is either (1) a third party beneficiary to the contract, (2) a successor in interest to the contract, or (3) within a class of agents intended to benefit from the arbitration clause. See id. at 745-48. Since, as indicated below, Regence-Utah and TRG are third party beneficiaries to the Washington Agreement and Regence-Washington and TRG are third party beneficiaries to the Utah Agreement, this Court will only address the first Britton category.

Under federal law, only those who are *intended* third party beneficiaries to a contract have standing to compel arbitration. See Britton, 4 F.3d at 745. To be an intended beneficiary, a party "need not be specifically or individually identified in the contract, but must fall within a class clearly intended by the parties to benefit from the contract. One way to ascertain such intent is to ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him or her." Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1211 (9th Cir. 1999) (internal citations omitted), amended by, 203 F.3d 1175 (9th Cir.), cert. denied, 531 U.S. 812 (2000).

A review of the Washington Agreement makes it clear that Defendants Regence-Utah and TRG are intended beneficiaries of that agreement. The Washington Agreement requires USHW-Medical to "offer its professional services" not just to Regence-Washington insureds, but also to those who are insured by TRG and Regence-Utah. McLaughlin Decl., Ex. A. at pp. 2, 3, 6, 17. In addition, USHW-Medical agreed to "provide services to any Patient under any line of

ORDER REGARDING
OUTSTANDING MOTIONS

1  business . . . that is offered by [Regence-Washington] . . . [or its] affiliates . . . upon request of
2  [Regence-Washington]." Id. at p. 6. The affiliated companies include TRG and Regence-Utah.
3  Id. at p. 17. What is more, Regence-Utah and TRG could expect that such services would be
4  paid for according to the terms of the Washington Agreement. These terms constitute necessary
5  and direct benefits enjoyed by Regence-Utah and TRG. See In re New England Fish Co., 749
6  F.2d 1277, 1281 (9th Cir. 1984). Since Regence-Utah and TRG are third party beneficiaries to
7  the Washington Agreement, they may compel USHW-Medical to arbitrate the claims USHW-
8  Medical has raised against them.

9       The Utah Agreement requires USHW-Utah to provide medical services to insureds of
10 other Regence entities, including Regence-Washington and TRG. USHW-Utah must then bill
11 Regence-Utah in order to receive payment for attending to the other Regence insureds.
12 According to these terms, Regence-Washington and TRG would necessarily and directly benefit
13 from the Utah Agreement and should be considered intended third-party beneficiaries of that
14 agreement. Accordingly, Regence-Washington and TRG may compel USHW-Utah to arbitrate
15 the claims USHW-Utah has asserted against them.

16         **b.**     **Parties Bound to Submit Claims to Arbitration.**

17      Defendants claim that: (1) Regence-Utah should be allowed to compel USHW-
18 Washington, USHW-Medical, and USHW-Holding to arbitrate under the Utah Agreement; (2)
19 Regence-Washington should be allowed to compel USHW-Utah and USHW-Holding to
20 arbitrate under the Washington Agreement; and (3) all three defendants should be allowed to
21 compel USHW-Washington to arbitrate under the Washington Agreement. With regard to the
22 first two claims, the Defendants note that all of the Plaintiffs' causes of action are based upon
23 and significantly intertwined with the two agreements, and argue that principles of equity allow
24 the signatories to the agreements, Regence-Utah and Regence-Washington, to bind the
25 nonsignatory plaintiffs to the arbitration agreements. With regard to the third claim, Defendants
26 note that USHW-Washington, although not a signatory to the Washington Agreement, has

ORDER REGARDING
OUTSTANDING MOTIONS

1  asserted its rights under that agreement. They argue that USHW-Washington should not be
2  allowed to claim rights under the agreement while, at the same time, asserting that it may not be
3  compelled to arbitrate according to the terms of the agreement.

4  Defendants are correct that the tort, RICO, and Washington statutory claims are
5  significantly intertwined with the two agreements. With regard to the first two claims, however,
6  such a close relationship does not provide a basis for equitable relief. To begin, the Ninth
7  Circuit has not yet recognized equitable principles as grounds for allowing a nonsignatory to
8  either invoke or be bound by an arbitration clause. The Circuits that do apply equitable
9  principles to arbitration clauses distinguish between situations where a nonsignatory seeks to
10 compel a signatory to abide by the signatory's own arbitration agreement and cases such as this,
11 where the signatory seeks to bind a nonsignatory to the terms of an arbitration agreement. See
12 Intergen N.V. v. Grina, 344 F.3d 134, 145-146 (1st Cir. 2003); see also MAG Portfolio Consult,
13 GmbH v. Merlin Biomed Group, LLC, 268 F.3d 58, 61 (2nd Cir. 2001)

14 As the Intergen court makes clear, it is not enough that the claims here are intertwined
15 with claims that will be resolved under the Washington and Utah arbitration clauses.
16 Defendants must also show that the nonsignatory plaintiffs embraced the contracts only to
17 repudiate them during litigation. With the exception of USHW-Washington (which will be
18 addressed below), no such showing has been made here. Although Defendants allege that
19 Plaintiffs have engaged in "artful" pleading in order to avoid triggering the arbitration clauses,
20 Defendants have not provided any evidence to indicate that the nonsignatory plaintiffs benefitted
21 from, or otherwise manifested their support for, the contracts prior to this dispute. As a result,
22 even if the equitable principles were to apply in the Ninth Circuit, they would not provide
23 Defendants with the relief they seek. Regence-Utah may not force USHW-Medical, USHW-
24 Washington, or USHW-Holding to arbitrate under the terms of the Utah Agreement. Regence-
25 Washington may not force, USHW-Utah, or USHW-Holding to arbitrate under the terms of the
26 Washington Agreement.

ORDER REGARDING
OUTSTANDING MOTIONS

1        Defendants, however, are entitled to compel USHW-Washington to arbitrate claims it has
2 brought under the Washington Agreement.  Although USHW-Washington is not a party to the
3 Washington Agreement, see Complaint at ¶ 31, it has asserted a breach of contract claim against
4 Regence-Washington, see id. at ¶¶ 6.1-6.2, and has generally asserted its rights to, and interests
5 in, the Washington Agreement.  Since USHW-Washington has asserted its rights in the
6 Washington Agreement under contract principles[4] and each of the defendants has standing to
7 compel arbitration under the Washington Agreement as either a signatory (Regence-Washington)
8 or third party beneficiary (TRG and Regence-Utah), Defendants may compel USHW-
9 Washington to arbitrate the claims it has brought against them.  See Britton, 4 F.3d at 744-45
10 (right to compel arbitration may be invoked by a party to the agreement or by one who otherwise
11 possesses the right to compel arbitration).

12       Similarly, principles of equitable estoppel prevent USHW-Washington from eschewing
13 the Washington Agreement's arbitration clause.  Circuits that have applied equitable estoppel in
14 these circumstances make it clear that USHW-Washington may not assert rights under the
15 Washington Agreement and, at the same time, claim that it cannot be compelled to arbitrate
16 according to the terms of that agreement.  See Intergen, 344 F.3d at 145-46; see also Internl.
17 Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 (4th Cir. 2000)
18 (nonsignatory who "has consistently maintained that other provisions of the same contract
19 should be enforced to benefit him," is estopped from arguing that it is not subject to the
20 contract's arbitration clause).  Accordingly, whether viewed under Britton or under equitable
21 estoppel, Defendants may compel arbitration of the claims brought against them by USHW-
22 Washington.

---

[4] Although the nature of USHW-Washington's rights in the Washington Agreement are not clear from the parties' submissions, it appears as if USHW-Washington may be regarded as either a third party beneficiary or as one of a class of agents intended to benefit from the arbitration clause.  See Britton, 4 F.3d at 744.

ORDER REGARDING
OUTSTANDING MOTIONS

**c.     Remaining Standing Questions.**

Two standing issues involving TRG remain. Although TRG has standing to compel USHW-Washington to arbitrate under the Washington Agreement, it does not have standing to compel any of the other nonsignatories to the respective agreements to arbitrate. There is no contractual or equitable basis for binding these non-party plaintiffs to the terms of the arbitration agreements. Thus, TRG may not compel USHW-Utah or USHW-Holding to arbitrate under the Washington Agreement, and may not compel USHW-Washington, USHW-Medical, or USHW-Holding to arbitrate under the Utah Agreement.

**3.     Plaintiffs' Request for a Consolidated Arbitration or for a Single Arbitrator.**

Plaintiffs request that the arbitrations be consolidated into a single arbitration or, in the alternative, that one arbitrator be appointed to conduct the arbitration under both the Utah Agreement and the Washington Agreement. Both requests are denied. Neither agreement mentions consolidation and the Ninth Circuit has held that in the absence of the parties' consent, district courts do not have authority under the FAA to consolidate arbitrations. See Weyerhaeuser Co. v. Western Seas Shipping Co., 743 F.2d 635, 637 (9th Cir.) cert. denied, 469 U.S. 1061 (1984); accord Government of U.K. of Gr. Brit. v. Boeing Co., 998 F.2d 68, 72 (2nd Cir. 1993).

Recognizing that this Court is bound by the Weyerhaeuser precedent, Plaintiffs suggested at oral argument that under Green Tree Financial Corp. v. Bazzle, 539 U.S. 444 (2003), this Court had authority to appoint a single arbitrator for both contract disputes and allow that one arbitrator to decide whether the arbitrations should be consolidated. In Green Tree the Supreme Court held that under a broad arbitration clause, a dispute about the meaning of an arbitration clause is properly determined by the arbitrator, not by the Courts. See id. at 422. Here, however, there is no ambiguity about the scope of the arbitration clause or the method that the parties adopted for choosing an arbitrator. This Court would be stretching its authority to ignore the plain terms of arbitration agreements and choose a single arbitrator to preside over both

ORDER REGARDING
OUTSTANDING MOTIONS

1 disputes.  As <u>Weyerhaeuser</u> made clear, once an arbitration clause has been found to exist, this
2 Court must enforce it according to its terms.  743 F.2d at 637.

### 4. Conclusions Regarding Arbitration.

Under the terms of the Utah Agreement, (1) USHW-Utah may compel Regence-Utah to arbitrate the breach of contract claim; and (2) USHW-Utah may be compelled to arbitrate the claims it has brought against TRG and Regence-Washington.  Under the terms of the Washington Agreement, (1) USHW-Medical may compel Regence-Washington to arbitrate the breach of contract claim; (2) USHW-Medical may be compelled to arbitrate the claims it has brought against TRG and Regence-Utah; and (3) USHW-Washington may be compelled to arbitrate the claims it has brought against Regence-Washington, Regence-Utah, and TRG.

The remaining claims are not subject to arbitration clauses in the respective agreements and neither party may compel their arbitration.

## C. Venue of the Arbitrations.

Plaintiffs challenge the enforceability of the Utah Agreement's forum selection clause on the grounds that the type of disputes at issue here are not contemplated by that clause.  Plaintiffs argue that the Utah Agreement should be arbitrated in Seattle, rather than in Salt Lake City.

The Court agrees with Plaintiffs' conclusion, but for a different reason.  The FAA requires that both the Washington Agreement and the Utah Agreement be arbitrated in the Western District of Washington, regardless of their respective forum selection clauses.[5]  <u>See</u> 9 U.S.C. § 4.  Notwithstanding the Utah Agreement's venue provision and this Court's duty to

---

[5] The parties did not refer to the FAA's venue restrictions in their motions.  Given that the result mandated under § 4 of the FAA does not fully comport with the suggested arbitration proceedings advanced by either party (Plaintiffs requested one consolidated arbitration in Seattle while Defendants requested one arbitration in Seattle and one arbitration in Salt Lake City), this Court anticipates that neither party will be entirely satisfied with the result.  The Court reminds the parties that, so long as they agree, they may "contractually modify the arbitration process by designing whatever procedures and systems they think will best meet their needs." <u>Kyocera Corp. v. Prudential-Bache T Servs.</u>, 341 F.3d 987, 1000 (9th Cir. 2003).

ORDER REGARDING
OUTSTANDING MOTIONS

1  enforce the arbitration clauses according to the terms of the respective agreements, the FAA
2  requires an arbitration to occur in the same district in which the motion to compel is brought.
3  See 9 U.S.C. § 4 ("[t]he hearing and proceedings, under such agreement, shall be within the
4  district in which the petition for an order directing such arbitration is filed").  This is true even if
5  the arbitration agreement contemplates that the arbitration would occur in a different venue.  See
6  Continental Grain Co. v. Dant & Russel, Inc., 118 F.2d 967, 969 (9th Cir. 1941); accord Textile
7  Unltd., Inc. v. A..BMHAND Co., Inc., 240 F.3d 781, 785 (9thCir. 2001) (plain language of § 4
8  "confines the arbitration to the district in which the petition to compel is filed.  It does not
9  require that the petition be filed where the contract specified that arbitration should occur").
10 Thus, despite the express terms of the Utah Agreement, the FAA mandates that the arbitration of
11 any disputes under that agreement occur in the Western District of Washington.  Similarly, the
12 arbitration of any disputes under the Washington Agreement must also occur in the Western
13 District of Washington.

14 **D.     The Motion to Stay Remaining Claims Pending Arbitration**.

15         The Court is required to stay those claims that are subject to arbitration.  See 9 U.S.C. §
16 3.  Defendants have moved to stay the remaining claims pending arbitration and Plaintiffs do not
17 oppose this motion.  Under the circumstances, a stay of the non-arbitrable claims is appropriate.
18 See CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962) (discussing factors a Court should
19 consider in determining whether to grant a stay of claims that are not subject to arbitration).

20 **E.     The Motion to Transfer Utah Claims to Utah**

21         Finally, Defendants request that non-arbitrable claims arising out of or relating to the
22 Utah Agreement be transferred to the district court in Utah is denied.  Although the Utah
23 Agreement does contain a Utah forum selection clause, that clause only relates to arbitrations.
24 The Utah Agreement does not specify a forum for non-arbitrable claims.  Even if the agreement
25 did specify such a forum, defendants have not met their burden under 28 U.S.C. § 1404(a) of
26 showing that the overall convenience of the parties and witnesses, in the interests of justice,

ORDER REGARDING
OUTSTANDING MOTIONS

1  weighs in favor of transferring the non-arbitrable Utah claims to the district court in Utah. See
2  Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

### III.  CONCLUSION

For all the foregoing reasons, Plaintiffs' "Motion to Compel Arbitration" (Dkt. # 2) is GRANTED IN PART AND DENIED IN PART.  Defendants' "Motion to (1) Dismiss Utah Defendant for Lack of Personal Jurisdiction, (2) Compel Arbitrations, (3) Stay Any Remaining Claims Pending Arbitration, and (4) Transfer Utah Claims to Utah" (Dkt. # 8) is GRANTED IN PART AND DENIED IN PART.  The motion to dismiss Regence-Utah for lack of personal jurisdiction is DENIED.  Defendants' motion to transfer remaining Utah claims to Utah is DENIED.  Plaintiffs' motions to consolidate arbitration or appoint a single arbitrator are DENIED.  Finally, Plaintiffs' motion challenging the enforceability of the Utah Agreement's forum selection clause is GRANTED.  Absent an agreement by the parties to the contrary, they are required to arbitrate the claims as articulated in Section II.B.4 of this Order.  The arbitrations shall both take place in the Western District of Washington.

The Court ORDERS that the litigation related to all of the claims asserted by Plaintiffs be STAYED pending the arbitrations under the Utah and Washington Agreements.

DATED this 26th day of April, 2005.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER REGARDING
OUTSTANDING MOTIONS

-16-